1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TIMOTHY JONES,

11             Plaintiff,              No. CIV S-09-1208 DAD P

12        vs.

13   MICHAEL MARTEL, et al.,           ORDER AND

14             Defendants.             FINDINGS AND RECOMMENDATIONS

15   _____/

16             Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary

18   judgment brought, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on behalf of

19   defendants Weinholdt and Hernandez.  (Doc. No. 15.)  Plaintiff has filed an opposition to

20   defendants' motion.[1]  Defendants have not filed a reply.

21   /////

22   /////

23   _____

24        [1] Plaintiff has filed a document styled, "Notice and Motion for Summary Adjudication;
     Memorandum of Points and Authorities, Plaintiff's Opposition to the Defendant's Notice and
25   Motion For Summery (sic) Judgement; With Memorandum of Points and Authorities."  (Doc.
     No. 19.)  The court has construed this filing as plaintiff's opposition to defendant's motion for
26   summary judgment now pending before the court.

                                        1

**BACKGROUND**

Plaintiff is proceeding on his original complaint (Doc. No. 1) against defendants Weinholdt and Hernandez.  Therein, he alleges as follows.  On May 9, 2002, while incarcerated at Pleasant Valley State Prison ("PVSP"), plaintiff was classified as "ADA/EC disabled, DDP Code NCF, DDP Codes: DNM" due in part to his documented history of suffering epileptic seizures.  It was noted that plaintiff required a cane and that his housing was restricted to the "lower tier, lower/bottom bunk, no triple bunking and no stairs."  On August 29, 2002, while incarcerated at Wasco State Prison, plaintiff was diagnosed as "permanently mobility impaired" in his lower extremities.  According to that diagnosis, plaintiff required "crutches or [a] walker." (Compl. (Doc. No. 1) at 3.)[2]

On May 12, 2008, PVSP's "MAR Committee" approved plaintiff's "Comprehensive Accommodation Chrono," which allowed plaintiff to possess a wooden cane.[3] On May 28, 2008, Mule Creek State Prison ("MCSP"), received "hard copy" notification that plaintiff required "lower/bottom bunk, lower tier, no stairs, no triple bunk" housing accommodations.  (Id. at 3-4.)

On July 3, 2008, plaintiff was transferred to the MCSP Administrative Segregation Unit.  Upon arriving in administrative segregation defendant Sergeant Hernandez informed plaintiff that defendant Hernandez was going to house plaintiff on the upper tier. Plaintiff informed defendant Hernandez that he had an accommodation chrono that required him to be housed on the lower tier and asked defendant Hernandez to house him on the lower tier. Defendant Hernandez ignored plaintiff's accommodation chrono, refused plaintiff's request and had plaintiff escorted to his cell on the upper tier.  (Id. at 4.)

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[3] Plaintiff apparently was transferred back to PSVP, though he does not provide the date of that transfer.

1        On July 7, 2008, while returning from the shower to his cell on the upper tier

2   plaintiff slipped and fell, severely injuring his spine.  Plaintiff was transported to the prison's

3   central treatment clinic via motorized medical cart.  Plaintiff's pain "was 9 on a scale of 10" and

4   he was treated with Toradol and Robaxin.  After plaintiff became drowsy, he was returned to

5   administrative segregation by wheelchair.  (Id.) Upon plaintiff's return to administrative

6   segregation, defendant Hernandez ordered him to walk up the stairs to his cell on the upper tier.

7   Plaintiff "begged" defendant Hernandez not to force plaintiff to walk up the stairs but defendant

8   Hernandez ignored plaintiff's pleas.  As plaintiff climbed the stairs he "felt his back and spine

9   popping."  (Id. at 5.)

10       From July 7, 2008, to July 17, 2008, plaintiff repeatedly complained to prison

11  staff that he was "ADA disabled" and that "ADA accommodations" required that he be celled on

12  the lower tier, but his complaints were ignored.  On July 17, 2008, plaintiff filed an

13  administrative appeal, complaining that he was being housed on the upper tier despite his

14  "seizures and [] permanent disability" and requested that he be moved to the lower tier.  That

15  same day defendant Hernandez granted plaintiff's appeal and moved him to the lower tier.

16  Defendant Hernandez however did not offer plaintiff any assistance to move his property from

17  the upper tier to the lower tier.  While moving his property down the stairs plaintiff "felt his back

18  popping and being further injured."  (Id. at 5-6.)

19       On September 3, 2008, Dr. Christopher Smith ordered that plaintiff be given a

20  wheelchair in response to "MRI findings" and because "pt has worsening neuro."  That same day

21  Physician's Assistant M. Mallat submitted a CDC Form 7410 Comprehensive Accommodation

22  Chrono requesting that plaintiff not be assigned jobs requiring standing.  On September 31, 2008,

23  defendant Weinholdt denied that request.  On February 23, 2009, plaintiff had a "lumbar

24  disectomy lumbar four-five right."  Plaintiff remains in constant pain and is confined to a

25  wheelchair.  (Id. at 6.)

26  /////

1    Plaintiff claims that the defendants have acted with deliberate indifference to his

2    health and have subjected him to the unnecessary and wanton infliction of pain in violation of the

3    Eighth Amendment.  Specifically plaintiff alleges that defendant Hernandez disregarded

4    plaintiff's lower-tier accommodation chrono, resulting in severe injury to plaintiff.  Plaintiff also

5    alleges that defendant Weinholdt was in a position of authority to implement a policy that would

6    "reduce the risk of . . . officers ignoring" prisoner medical accommodations chronos but failed to

7    take such action.  Plaintiff seeks compensatory and punitive damages.  (Id. at 8-9.)

8                            **PROCEDURAL HISTORY**

9    On June 15, 2009, the court ordered the United States Marshal to serve plaintiff's

10   complaint on defendants Weinholdt and Hernandez.  (Doc. No. 8.)  Defendants filed an answer

11   on August 21, 2009 .  (Doc. No. 10.)  On September 8, 2009, the undersigned issued a discovery

12   order.  (Doc. No. 11.)

13   On March 19, 2010, counsel for defendants filed a motion for summary judgment,

14   arguing that the defendants were entitled to entry of judgment in their favor because: (1) there is

15   no evidence that defendant Hernandez controverted plaintiff's accommodation chrono; (2)

16   defendant Weinholdt did not deny plaintiff's accommodation chrono; (3) plaintiff cannot sue

17   state officials in their individual capacities under the Americans with Disabilities Act; and (4) the

18   defendants are entitled to qualified immunity.  (Doc. No. 15.)  Plaintiff filed an opposition to

19   defendants' motion for summary judgment on May 14, 2010.[4]  (Doc. No. 19.)  Defendants have

20   elected not to file a reply.

21           SUMMARY JUDGMENT STANDARDS UNDER RULE 56

22   Summary judgment is appropriate when it is demonstrated that there exists "no

23   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

24   matter of law."  Fed. R. Civ. P. 56(c).

25   _____

26   [4] As noted above, the court has construed the document plaintiff filed on May 14, 2010, as his opposition to defendants' motion for summary judgment.

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

　　　　If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2  1436 (9th Cir. 1987).

3          In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10          In resolving the summary judgment motion, the court examines the pleadings,

11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

22                       **OTHER APPLICABLE LEGAL STANDARDS**

23  I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

24          The Civil Rights Act under which this action was filed provides as follows:

25          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the
26          deprivation of any rights, privileges, or immunities secured by the

6

1            Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.

2

3  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

4  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u>

5  <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362

6  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

7  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

8  omits to perform an act which he is legally required to do that causes the deprivation of which

9  complaint is made."  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

10            Moreover, supervisory personnel are generally not liable under § 1983 for the

11  actions of their employees under a theory of <u>respondeat superior</u> and, therefore, when a named

12  defendant holds a supervisorial position, the causal link between him and the claimed

13  constitutional violation must be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862

14  (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

15  allegations concerning the involvement of official personnel in civil rights violations are not

16  sufficient.  <u>See Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

17  II.  <u>The Eighth Amendment</u>

18            The Eighth Amendment prohibits the infliction of "cruel and unusual

19  punishments."  U.S. CONST. AMEND. VIII.  The "unnecessary and wanton infliction of pain"

20  constitutes cruel and unusual punishment prohibited by the United States Constitution.  <u>Whitley</u>

21  <u>v. Albers</u>, 475 U.S. 312, 319 (1986); <u>see also</u> <u>Ingraham v. Wright</u>, 430 U.S. 651, 670 (1977);

22  <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).  Neither accident nor negligence constitutes cruel and

23  unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith,

24  that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."

25  <u>Whitley</u>, 475 U.S. at 319.

26  /////

1    What is needed to show unnecessary and wanton infliction of pain "varies

2    according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S.

3    1, 5 (1992) (citing Whitley, 475 U.S. at 320).  The treatment a prisoner receives in prison and the

4    conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  See

5    Helling v. McKinney, 509 U.S. 25, 31 (1993).  The Eighth Amendment imposes duties on prison

6    officials, who must provide all prisoners with the basic necessities of life such as food, clothing,

7    shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832

8    (1994); DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989);

9    Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

10    To prevail on such a claim the plaintiff must show that objectively he suffered a

11    "sufficiently serious" deprivation.  Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-

12    99 (1991).  The plaintiff must also show that subjectively each defendant had a culpable state of

13    mind in allowing or causing the plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.  In this

14    regard, a prison official violates the Eighth Amendment "only if he knows that inmates face a

15    substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

16    abate it."  Id. at 847.  Under this standard, a prison official must have a "sufficiently culpable

17    state of mind," one of deliberate indifference to the inmate's health or safety.  Id.

18    III.  Qualified Immunity

19    "Government officials enjoy qualified immunity from civil damages unless their

20    conduct violates 'clearly established statutory or constitutional rights of which a reasonable

21    person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

22    Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

23    immunity defense, the central questions for the court are (1) whether the facts alleged, taken in

24    the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

25    statutory or constitutional right and (2) whether the right at issue was "clearly established."

26    Saucier v. Katz, 533 U.S. 194, 201 (2001).

1    Although the court was once required to answer these questions in order, the

2  United States Supreme Court has recently held that "while the sequence set forth there is often

3  appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223,

4  ___, 129 S. Ct. 808, 818 (2009).  In this regard, if a court decides that plaintiff's allegations do

5  not make out a statutory or constitutional violation, "there is no necessity for further inquiries

6  concerning qualified immunity." Saucier, 533 U.S. at 201.  Likewise, if a court determines that

7  the right at issue was not clearly established at the time of the defendant's alleged misconduct,

8  the court may end further inquiries concerning qualified immunity at that point without

9  determining whether the allegations in fact make out a statutory or constitutional violation.

10  Pearson, 129 S. Ct. at 818-21.

11    In deciding whether the plaintiff's rights were clearly established, "[t]he proper

12  inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was

13  unlawful in the situation he confronted' . . . or whether the state of the law [at the relevant time]

14  gave 'fair warning' to the officials that their conduct was unconstitutional." Clement v. Gomez,

15  298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202).  The inquiry must be

16  undertaken in light of the specific context of the particular case.  Saucier, 533 U.S. at 201.

17  Because qualified immunity is an affirmative defense, the burden of proof initially lies with the

18  official asserting the defense.  Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536

19  (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).

20  IV.  Americans with Disabilities Act

21    Title II of the Americans with Disabilities Act (ADA) "prohibit[s] discrimination

22  on the basis of disability."  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  The Act

23  specifically provides that:

24        Subject to the provisions of this subchapter, no qualified individual
          with a disability shall, by reason of such disability, be excluded
25        from participation in or be denied the benefits of the services,
          programs, or activities of a public entity, or be subjected to
26        discrimination by any such entity.

42 U.S.C. § 12132.  Title II of the ADA applies to state prisons and inmates.  <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 210-12 (1998); <u>Armstrong v. Wilson</u>, 124 F.3d 1019, 1025 (9th Cir. 1997).  To establish an ADA violation, plaintiff must show that (1) he is a qualified individual with a disability, (2) he was excluded from participation in a public entity's services, programs, or activities, and (3) such exclusion was by reason of his disability.  <u>Lovell</u>, 303 F.3d at 1052.  Because the ADA prohibits discrimination in the services, programs, or activities of a public entity, the proper defendant is the public entity or an official acting in his or her official capacity.  <u>Everson v. Leis</u>, 556 F.3d 484, 501 n. 7 (6th Cir. 2009); <u>see also</u> <u>Caesar v. Horel</u>, 2010 WL 4393894, at *7 (N.D. Cal. Oct. 29, 2010) ("The proper defendants to Plaintiff's disability discrimination claims are the public entities that allegedly denied him equal access to their programs" including the CDCR); <u>Ellington v. Clark</u>, No. 1:09-cv-02141-AWI-DLB PC, 2010 WL 2303333, at *5 (E.D. Cal. June 7, 2010) (because correctional facilities are "public entities" within the meaning of the ADA, the correctional facility, not prison officials or the State of California, is the proper defendant with respect to plaintiff's ADA claim).

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.  <u>Defendants' Statement of Undisputed Facts and Evidence</u>

Defendants' statement of undisputed facts is supported by citations to copies of documents found in plaintiff's inmate Central File and plaintiff's medical records, along with a copy of the Remedial Plan ordered by the district court in <u>Armstrong v. Davis, et al.</u>, No. CIV 94-2307 (N.D. Cal.).

The evidence submitted by the defendants establishes the following facts.  When an inmate requires accommodations that are medically necessary or are required under the Americans with Disabilities Act ("ADA"), California Department of Corrections and Rehabilitation ("CDCR") health care staff complete a Form 7410.  The accommodation may be permanent or temporary.  Any physical limitations affecting the inmate's ability to perform specific activities are indicated on the form.  The inmate's primary care physician forwards the

1   form to the Health Care Manager/Chief Medical Officer for review.  The Health Care

2   Manager/Chief Medical Officer approves or denies the specific requested accommodations.  At

3   MCSP, Dr. Smith was the Chief Physician and Surgeon who reviewed accommodation chronos

4   for approval at the time relevant to this action.  An approved accommodation chrono remains

5   current unless a new form is generated or until stated period of time expires.  (Defs.' SUDF

6   (Doc. No. 16) 14-16, 19-20, 22-23; Defs.' Ex. A. (Doc. No. 16-1) at 18-23; Defs.' Ex. C (Doc.

7   No. 16-2) at 65-68.)[5]

8           On June 18, 2002, just after plaintiff was placed into the custody of the CDCR,

9   plaintiff was evaluated by Dr. Lee who completed a CDC 1845 Disability Verification form,

10  classifying plaintiff as permanently mobility impaired.  However, the Disability Verification

11  form indicated that plaintiff could walk 100 yards and up a flight of stairs without pause and that

12  he did not need aids to assist with walking or daily living activities.  (Defs.' SUDF (Doc. No. 16)

13  24; Defs.' Ex. A (Doc. No. 16-1) at 12.)

14          On June 29, 2006, plaintiff was housed at the California State Prison-Sacramento,

15  where Dr. Duc completed a Comprehensive Accommodation Chrono.  Dr. Lee had indicated that

16  plaintiff's 2002 chrono was permanent due to seizures but did not request any accommodations.

17  On January 24, 2007, Dr. Nangalama modified plaintiff's accommodation chrono, requesting that

18  plaintiff be provided the use of a wooden cane for five months.  (Defs.' SUDF (Doc. No. 16) 25-

19  26; Defs.' Ex. A (Doc. No. 16-1) at 14, 16.)

20          On May 8, 2008, Dr. Samson completed another temporary accommodation

21  chrono requesting that plaintiff be allowed to use a wooden cane for one year.  The Medical

22  Authorization Review Committee approved that request on May 17, 2008.  No other

23  accommodations were noted and plaintiff was not given a housing accommodation chrono at that

24  time.  (Defs.' SUDF (Doc. No. 16) 27; Defs.' Ex. A (Doc. No. 16-1) at 17.)

25  _____

26          [5] Citations to defendants' Statement of Undisputed Facts are to the specific numbered
    undisputed fact asserted.

1       On June 29, 2008, plaintiff was moved to administrative segregation after

2   informing Officer Burkhard that he feared for his safety and could no longer safely program on

3   Facility A.  The following day plaintiff was seen on the medical line.  Plaintiff told Dr. Tseng

4   that he had been taking Tylenol with Codeine for back pain.  However, plaintiff's medical profile

5   did not list that medication.  Dr. Tseng noted that plaintiff had an extensive medical file and a

6   history of requesting narcotics.  Dr. Tseng also noted that he believed that when plaintiff was out

7   of Tylenol with Codeine he would engage in "acting out behavior," as he had in the past.  (Defs.'

8   SUDF (Doc. No. 16) 28-29; Defs.' Ex. A (Doc. No. 16-1) at 24; Defs.' Ex. D-1 (Doc. No. 16-3)

9   at 50.)

10      On July 1, 2008, plaintiff complained of chest pain, but not back pain.  On July 7,

11  2008, plaintiff claimed that he had slipped and fallen, injuring his back.  Plaintiff remained in the

12  prison clinic for several hours on that occasion.  After receiving Toradol and Robaxin, plaintiff

13  reported feeling "some relief" and was released back to his housing unit.  Medical staff at that

14  time did not state that plaintiff could not return to his upper tier cell or that he could not climb

15  stairs.[6]  (Defs.' SUDF (Doc. No. 16) 30-31; Defs.' Ex. D-1 (Doc. No. 16-3) at 52-56.)

16      On July 9, 2008, plaintiff again claimed that he had fallen and "landed on [his]

17  butt."  The treating doctor at that time noted that plaintiff had a steady gait when walking with

18  his cane, but was slow without impairment when he walked without his cane.  However, the

19  doctor also noted that when a bee entered the room that plaintiff had jumped out of his chair.

20  (Defs.' SUDF (Doc. No. 16) 32; Defs.' Ex. D-1 (Doc. No. 16-3) at 57.)

21      On August 30, 2008, plaintiff submitted a sick-call slip, claiming that he had re-

22  injured his back on July 7, 2008, and that he had received next to no treatment for that injury.

23  Plaintiff requested an orthopedic mattress to alleviate his pain but at that time did not request a

24  _____

25      [6] The specific exhibit cited by defendants in support of this undisputed fact also indicates
    that plaintiff was advised to rest and to notify staff if he experienced an increase in pain or
    difficulty moving around.  (Defs.' SUDF (Doc. No. 16) 31; Defs.' Ex. D-1 (Doc. No. 16-3) at

26  56.)

1  lower-tier accommodation chrono or that he be relieved of climbing the stairs.  (Defs.' SUDF

2  (Doc. No. 16) 33; Defs.' Ex. D-1 (Doc. No. 16-3) at 6.)

3          On September 3, 2008, Physician's Assistant M. Mallat completed a

4  Comprehensive Accommodation Chrono requesting that plaintiff be granted a ground floor cell

5  and lower bunk on a temporary basis, that plaintiff be given a wheelchair and shower chair for

6  six months, and that plaintiff be excluded from job assignments that required him to stand.  Dr.

7  Smith partially approved that request, but denied the job assignment exclusion finding that the

8  request was not reasonable.  (Defs.' SUDF (Doc. No. 16) 34; Defs.' Ex. A (Doc. No. 16-1) at 18;

9  Defs.' Ex. D-2 (Doc. No. 16-4) at 7-8.)

10          On March 17, 2009, Dr. Naseed requested plaintiff be granted an accommodation

11  for a ground-floor, wheelchair-accessible cell, a lower bunk, knee and ankle braces, a wheelchair,

12  a shower chair, an extra pillow, and a job assignment that required no standing or walking for

13  more than thirty minutes and no lifting of greater than fifteen pounds.  Dr. Smith approved all of

14  the requested accommodations that same day.  (Defs.' SUDF (Doc. No. 16) 35; Defs.' Ex. A

15  (Doc. No. 16-1) at 19.)

16  II.  Defendants' Arguments

17          Defense counsel argues that defendants Weinholdt and Hernandez are entitled to

18  summary judgment in their favor with respect to plaintiff's Eighth Amendment claim because

19  there is no evidence that they were deliberately indifferent to plaintiff's medical needs and that

20  the defendants are entitled to qualified immunity.  Defense counsel also argues that plaintiff's

21  ADA claims fail because he seeks damages from the defendants in their individual capacities.

22  (Defs.' Mem. of P. & A. (Doc. No. 15) at 6-12.)

23          First, defense counsel contends that there is no evidence before the court that

24  defendant Sergeant Hernandez was deliberately indifferent to plaintiff's medical needs or

25  interfered with plaintiff's medical treatment.  Counsel contends that the undisputed evidence

26  before the court establishes that on June 29, 2008, when plaintiff was moved to administrative

1   segregation, plaintiff's housing was not restricted to the lower tier.  Moreover, on July 7, 2008,

2   when plaintiff was released back to administrative segregation, after allegedly falling, there was

3   no order that plaintiff be housed on the lower tier.  Defense counsel argues that in light of this

4   undisputed evidence, defendant Sergeant Hernandez was not deliberately indifferent to plaintiff's

5   medical needs for failing to house plaintiff on the lower tier.  (Defs.' Mem. of P. & A. (Doc. No.

6   15) at 7-9.)

7            Second, defense counsel contends that defendant Weinholdt did not grant or deny

8   plaintiff's September 3, 2008, accommodation chrono.  Defense counsel argues that the

9   undisputed evidence before the court establishes that it was Dr. Smith, the MCSP Chief

10  Physician and Surgeon, who reviewed the September 3, 2008 accommodation chrono issued by

11  Physician's Assistant Mallat and denied that chrono in part.  (Id. at 8-9.)

12           Third, counsel for the defendants argues that each of them are entitled to summary

13  judgment in their favor on qualified immunity grounds.  Specifically, counsel contends that the

14  undisputed evidence in this case does not establish that the defendants violated plaintiff's

15  constitutional rights.  In addition, counsel argues that a reasonable person in the defendants'

16  respective positions could have reasonably believed that their conduct in connection with

17  plaintiff's medical care was lawful.  (Id. at 10-11.)

18           Finally, defense counsel contends that, to the extent plaintiff alleges claims for

19  violation of the ADA, those claims fail because plaintiff is seeking damages from the defendants

20  in their individual capacities and such individual liability is precluded under Title II of the ADA.

21  (Id. at 9-10.)

22  III.  Plaintiff's Opposition

23           Plaintiff opposition does not comply with Local Rule 260(b), which requires a

24  party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's

25  statement of undisputed facts and (2) expressly admit or deny each fact.  Under that provision the

26  party opposing summary judgment is also required to cite evidence in support of each denial.  In

1  the absence of the required admissions and denials, the court has reviewed plaintiff's arguments

2  and evidence in an effort to discern whether plaintiff denies any fact asserted in defendants'

3  statements of undisputed facts and, if so, what evidence plaintiff has offered that may

4  demonstrate the existence of a disputed issue of material fact with respect to any of his claims.

5       Plaintiff's opposition to defendants' motions for summary judgment is supported

6  by copies of his medical records, inmate appeals, and plaintiff's own declaration signed under

7  penalty of perjury.  Plaintiff repeats his contention that the defendants were deliberately

8  indifferent to his serious medical needs.  Specifically, plaintiff vaguely asserts that on July 7,

9  2008, when he fell while being escorted to his cell on the upper tier that the defendants were

10 aware that he "was not suppose to be housed on the upper tier" but they housed plaintiff on the

11 upper tier anyway.  In support of his argument, plaintiff claims that he was housed on the lower

12 tier at every prison prior to his arrival at MCSP.  Plaintiff contends that he was always housed on

13 the lower tier because of his seizure disorder, for which he received medication while at MCSP.

14 In this regard plaintiff contends that defendants Weinholdt and Hernandez knew that he should

15 have been housed on the lower tier because they knew plaintiff took medication to treat his

16 seizure disorder.  Plaintiff also asks that the court "take note to all of the ADA violations."  (Pl.'s

17 Opp'n to Defs.'s Mot. for Summ. J. (Doc. No. 19) at 2-4.)

18                                              **ANALYSIS**

19 I.  ADA Claims

20       A plaintiff may bring a claim under Title II of the ADA against state entities for

21 injunctive relief and damages.  See Phiffer v. Columbia River Correctional Institute, 384 F.3d

22 791 (9th Cir. 2004); Lovell, 303 F.3d 1039.  However, a plaintiff cannot seek damages pursuant

23 to the ADA against the defendants in their individual capacities.  Eason v. Clark County School

24 Dist., 303 F.3d 1137, 1144 (9th Cir. 2002) (citing Garcia v. S.U.N.Y. Health, 280 F.3d 98, 107

25 (2d Cir. 2001)).  To the extent plaintiff seeks to pursue claims against any individual defendant

26 for violations of the ADA, he may do so only with respect to seeking injunctive relief and only as

1  to individual defendants he has named in their official capacities.  Miranda B. v. Kitzhaber, 328

2  F.3d 1181, 1187-88 (9th Cir. 2003) (Title II's statutory language does not prohibit injunctive

3  action against state officials in their official capacities); see also Thompson v. Davis, 295 F.3d

4  890, 895 (9th Cir. 2002) (plaintiffs seeking only prospective injunctive relief from defendants in

5  their official capacities).

6          Here, plaintiff has expressly sued the defendants only in their "individual

7  capacity."  (Compl. (Doc. No. 1) at 2-3.)  Moreover, in his complaint plaintiff does not seek

8  injunctive relief, but instead requests only the award of compensatory and punitive damages

9  against defendants.  (Id. at 9.)  Accordingly, defendants' motion for summary judgment should be

10  granted as to plaintiff's ADA claims.

11  II.  Eighth Amendment

12          The court finds that defendants Weinholdt and Hernandez are also entitled to

13  summary judgment in their favor with respect to plaintiff's Eighth Amendment claim.

14          It is well settled that a prison official violates the Eighth Amendment when two

15  criteria are met.  First, a plaintiff's alleged deprivation must be sufficiently serious from an

16  objective standpoint.  Put another way, a prison official's act or omission must result in the

17  denial of "the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (citing

18  Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  Second, a prison official must act, or fail to act,

19  with "deliberate indifference" to a prisoner's health and safety.  Id. at 834.  In the prison context,

20  "only unnecessary and wanton infliction of pain" implicates the Eighth Amendment.  Id. (citing

21  Wilson v. Seiter, 501 U.S. 294 (1991)).  Thus, a court can hold a prison official liable only if "the

22  official knows of and disregards an excessive risk to inmate health or safety; the official must

23  both be aware of facts from which the inference could be drawn that a substantial risk of serious

24  harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

25          The court finds that the defendants have borne their initial responsibility of

26  demonstrating that there is no genuine issue of material fact with respect to the issue of

16

1   defendants' deliberate indifference to plaintiff's health and safety.  First, with respect to

2   defendant Weinholdt, plaintiff has failed to provide this court with any evidence to support his

3   assertion that defendant Weinholdt played any role in the partial denial of the September 3, 2008,

4   Comprehensive Accommodation Chrono regarding accommodations to be offered plaintiff.  To

5   the contrary, defendants' undisputed evidence establishes that it was Dr. Smith, and not

6   defendant Weinholdt, that partially denied the September 3, 2008, accommodation chrono issued

7   by Physician's Assistant Mallat and .

8          Second, with respect to defendant Sergeant Hernandez, plaintiff has alleged that

9   upon his arrival in administrative segregation on July 3, 2008, Sergeant Hernandez ignored

10  plaintiff's lower tier accommodation chrono and had plaintiff escorted to his cell on the upper

11  tier.  Plaintiff claims that on July 7, 2008, while returning to his cell on the upper tier he slipped

12  and fell, injuring his back.  However, contrary to plaintiff's claim, there is no evidence before the

13  court that plaintiff had a lower-tier accommodation chrono in July of 2008.  Indeed, the

14  undisputed evidence before the court establishes that in July of 2008 the only accommodation

15  chrono in effect merely allowed plaintiff the use of a wooden cane and did not restrict his

16  housing to a lower tier cell assignment.  Plaintiff has offered no evidence to support his claim or

17  to dispute defendants' evidence in this regard.  See Keenan v. Allen, 91 F.3d 1275, 1279 (9th

18  Cir. 1996) (the nonmoving party has the burden of identifying, with reasonable particularity, the

19  evidence precluding summary judgment).  Plaintiff's argument, unsupported by any evidence,

20  that defendants "knew" he should be assigned to a lower tier cell because he had received lower

21  tier cell assignments at other prisons, is not evidence and is insufficient to defeat summary

22  judgment.

23          Third, plaintiff claims that on July 7, 2008, after he was treated in the prison clinic

24  and returned to administrative segregation, defendant Sergeant Hernandez ordered plaintiff to

25  walk up the stairs to his cell on the upper tier.  Plaintiff alleges that he "begged" defendant

26  Hernandez not to force him to walk up the stairs but defendant Hernandez ignored plaintiff's

1   pleas and that as plaintiff climbed the stairs he "felt his back and spine popping." (Compl. (Doc.

2   No. 1) at 5.)  However, the undisputed evidence before the court establishes that plaintiff was

3   released from the prison medical clinic on July 7, 2008, without any restriction on his tier

4   assignment and without any order or directive that he not climb stairs due to his condition.

5   Rather, plaintiff was merely instructed to notify prison staff if he experienced an increase in pain

6   or difficulty moving around.  There is no evidence before the court that plaintiff's ability to climb

7   the stairs was restricted, by accommodation chrono, medical opinion or otherwise, or that

8   defendant Hernandez was aware of any limitation to plaintiff's ability to go up the stairs to his

9   upper tier cell.  In this regard, plaintiff has failed to establish that defendant Hernandez was

10  deliberately indifferent for ordering plaintiff to climb the stairs to reach his cell on the upper tier.

11          Finally, plaintiff has alleged that from July 7, 2008 to July 17, 2008, he repeatedly

12  complained to prison staff that he was "ADA disabled" and that "ADA accommodations"

13  required that he be celled on the lower tier and that his complaints were ignored.  The evidence

14  before the court reveals that on July 17, 2008, plaintiff filed an administrative appeal,

15  complaining that he was being housed on the upper tier despite his "seizures and [] permanent

16  disability" and he requested that he be moved to the lower tier.  That same day defendant

17  Hernandez granted plaintiff's appeal and moved plaintiff to the lower tier.  Plaintiff claims that

18  defendant Hernandez did not offer plaintiff any assistance to move his property from the upper

19  tier to the lower tier and that while moving his property down the stairs plaintiff "felt his back

20  popping and being further injured." (Compl. (Doc. No. 1) at 5-6.)

21          The only relevant evidence plaintiff has submitted as to this claim is a copy of an

22  Inmate Appeal form, initially dated July 7, 2008.  (Pl.'s Opp'n to Defs.'s Mot. for Summ. J.

23  (Doc. No. 19) at 49.)  In that appeal plaintiff complains that he is being housed on the upper tier

24  despite his "seizure's and a permanent disability," and injury to his back.  (Id.)  Plaintiff also

25  requested to be moved to the lower tier because of his medical condition.  (Id.)  According to that

26  document, plaintiff's request was granted at the informal level on July 17, 2008, though no

1   reason for that decision was stated.  (Id.)  However, the fact that plaintiff's request for a cell

2   move to the lower tier was granted in response to his July 7, 2008 Inmate Appeal does not

3   support an inference that he was previously required to be housed on the lower tier.  The fact that

4   plaintiff's appeal was granted, absent any additional evidence, establishes nothing more than that

5   prison officials granted his request to move to the lower tier.  It is not an admission of wrong

6   doing.

7           Moreover, plaintiff has not even alleged that he requested aid in transporting his

8   property from the upper tier to the lower tier.  In this regard, assuming arguendo that plaintiff's

9   assertion that defendant Hernandez granted plaintiff's request to move to the lower tier but did

10  not provide him assistance to move were true, it would still fail to establish that defendant

11  Hernandez was deliberately indifferent to plaintiff's health and safety.  Deliberate indifference

12  requires a showing that "prison officials were aware of a "substantial risk of serious harm" to a

13  prisoner's health or safety and that there was no "reasonable justification for the deprivation, in

14  spite of that risk."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quoting Farmer, 511

15  U.S. at 837, 844)).  The fact that defendant Hernandez granted plaintiff's request to be housed on

16  the lower tier but did not him assistance in moving his property, in the absence of a directive to

17  do so or even a request from plaintiff for assistance, does not establish that defendant Hernandez

18  acted in disregard to a substantial risk of serious harm to plaintiff's health.

19          Given the evidence submitted by the defendants in support of their motion for

20  summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of

21  material fact with respect to his claim that the defendants demonstrated deliberate indifference.

22  As noted above, to demonstrate a genuine issue of disputed material fact, the party opposing

23  summary judgment "must do more than simply show that there is some metaphysical doubt as to

24  the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to

25  find for the nonmoving party, there is no 'genuine issue for trial.' "  Matsushita, 475 U.S. at 587

26  (citation omitted).

1    Plaintiff has tendered no evidence demonstrating that in July of 2008 he had an

2    accommodation chrono, or any other authority, requiring that he be housed on the lower tier.

3    Because plaintiff has not established the existence of a requirement, or even a recommendation,

4    that he be housed on the lower tier, he cannot establish that defendant Hernandez knew that

5    plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take

6    reasonable measures to abate it.  Finally, plaintiff has failed to offer any evidence that defendant

7    Weinholdt was involved at all in granting or denying plaintiff's accommodation chronos.

8    The court has considered plaintiff's opposition to the pending motion for

9    summary judgement and his verified complaint.  In considering defendants' motion for summary

10   judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences

11   from the facts before the court in plaintiff's favor.  Drawing all reasonable inferences in

12   plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence to create

13   a genuine issue of material fact with respect to his claim that the defendants were deliberately

14   indifferent to his health and safety.  See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

15   Indeed, plaintiff has failed to even establish that he suffered a sufficiently serious deprivation.

16   In this regard, plaintiff has failed to establish the existence of an element essential of his case

17   upon which he would bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322

18   For the foregoing reasons, the court concludes that the undisputed evidence before

19   the court establishes that defendants Weinholdt and Hernandez were not deliberately indifferent

20   to plaintiff's health and safety.  Accordingly, they are entitled to summary judgment in their favor

21   with respect to plaintiff's Eighth Amendment deliberate indifference claims.[7]

## CONCLUSION

23   IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly

24   assign a United States District Judge to this action.

25

26   [7]  In light of this recommendation, the court need not address defendants' argument that they are entitled to summary judgment in their favor on qualified immunity grounds.

1    IT IS HEREBY RECOMMENDED that:

2    1. Defendants Hernandez and Weinholdt's March 19, 2010 motion for summary

3    judgment (Doc. No. 15) be granted; and

4    2. This action be closed.

5    These findings and recommendations are submitted to the United States District

6    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

7    one days after being served with these findings and recommendations, any party may file written

8    objections with the court and serve a copy on all parties.  Such a document should be captioned

9    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10   shall be served and filed within seven days after service of the objections.  The parties are

11   advised that failure to file objections within the specified time may waive the right to appeal the

12   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13   DATED: February 18, 2011.

14

15

16   DAD:6
     jones1208.SJ

17

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26